# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 19-1692-GW-PLAx | Date | August 3, 2020 |
|---|---|---|---|
| Title | *SkyHawke Technologies, LLC, et al. v. GolfzonDeca, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None Present | None Present | |

**PROCEEDINGS:   IN CHAMBERS - ORDER**


   Attached hereto is the Court's Tentative Ruling on Defendants DECA International Corp. and GolfzonDeca, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint [30], and Plaintiffs' Motion for a Preliminary Injunction [36]. The Court sets a hearing on the motions for August 6, 2020 at 8:30 a.m. Counsel are to appear telephonically by contacting the court clerk at javier_gonzalez@cacd.uscourts.gov.

|  | : |
|---|---|
| Initials of Preparer | JG |

<u>*SkyHawke Technologies, LLC v. GolfzonDECA, Inc. et al.*</u>; Case No. 2:19-cv-01692-GW-(PLAx)
Tentative Ruling on: (1) Motion to Dismiss, and (2) Motion for Preliminary Injunction

**I.   Background[1]**

This action is the latest in a series of lawsuits, stretching back to 2010, between the parties arising from a business dispute over competing golf products. Besides this action, the parties are also in the middle of a separate patent infringement action before the Court (the "Patent Action"), as well as a Mississippi state court action (the "Mississippi Action") in which plaintiffs assert unfair competition law violations as well as other related claims.

Here, the plaintiffs have filed a lengthy complaint containing many of the same factual allegations and claims as the Mississippi Action. The plaintiffs assert 21 causes of action spanning claims of antitrust violations, other unfair business practices, patent invalidity, and others. Before the Court are the plaintiffs' motion for a preliminary injunction and the defendants' motion to dismiss the complaint.

A. <u>The Parties</u>

Plaintiffs SkyHawke Technologies, LLC ("SHT") and SkyHawke Licensing, LLC (collectively, "Plaintiffs") are both Mississippi limited liability companies with their principal place of business in Mississippi. Since at least 2014, Plaintiffs have produced a line of golf rangefinders under the "SkyCaddie" brand. FAC ¶ 74. The rangefinders are handheld devices that use GPS to measure the distance from the user to a target. This can be useful to a golf player in choosing the appropriate shot.

Defendant GolfzonDeca Inc. ("GolfzonDeca") is a South Korean corporation with its principal place of business in South Korea; defendants Deca International Corp. ("Deca") and GolfBuddy America, Inc. ("GBA") are both California corporations with their principal place of business in California. Though legally distinct entities, Plaintiffs allege that GolfzonDeca, Deca, and GBA (collectively, "Defendants") have acted "as a single, unified enterprise." FAC ¶ 37. Defendants offers their own competing line of rangefinders under the "GolfBuddy" brand. FAC

---

[1] The following abbreviations are used for the parties' filings: (1) First Amended Complaint ("FAC"), ECF No. 24; () Motion to Dismiss the First Amended Complaint ("MTD"), ECF No. 30; () Plaintiffs' Opposition to the Motion to Dismiss ("Opp."), ECF No. 33; Reply in Support of Motion to Dismiss ("Reply"), ECF No. 35; () Motion for a Preliminary Injunction ("Inj. Mot."), ECF No. 36; Opposition to Motion for Preliminary Injunction ("Opp. to Inj."), ECF No. 41; () Reply in Support of Preliminary Injunction ("Inj. Reply"), ECF No. 45.

1

¶ 11.

B. Factual Background

The heart of Plaintiffs' complaint is that Defendants, "acting jointly and as a single, unified enterprise," have infringed Plaintiffs' patents covering its rangefinders. FAC ¶¶ 37-38. Plaintiffs also allege that Defendants engaged in other unlawful conduct surrounding its infringement. The alleged unlawful conduct can be roughly divided into three buckets: (1) Defendants' failure to disclose Plaintiffs' prior art in the prosecution of some of GolfzonDeca's patents; (2) Defendants' deceit in the Patent Action; and (3) Defendants' misrepresentations in the marketing of its GolfBuddy products.

a. *Defendants' alleged misconduct in its patent prosecution*

Plaintiffs seek to invalidate three of GolfzonDeca's patents (the "GolfzonDeca Patents"), alleging that during the prosecution of those patents, GolfzonDeca failed to disclose all material relevant to their patentability.[2] FAC ¶ 63. According to Plaintiffs, many of their patents were prior art relevant to GolfzonDeca 's '162 Patent, and GolfzonDeca breached its duty to disclose Plaintiffs' prior art during the prosecution of the '162 Patent. FAC ¶¶ 64-71. Plaintiffs allege that the '842 Patent "appear[s] similar to the ['162 Patent]" and that it therefore "contains the same fatal deficiencies." FAC ¶ 82.

b. *Defendants' alleged misconduct in the Patent Action*

Plaintiffs allege that Defendants have been deceitful in the Patent Action.[3] According to Plaintiffs, Deca gave a false response to Plaintiffs' interrogatories back in 2011, FAC ¶ 41; GolfzonDeca gave essentially the same false response to Plaintiffs' interrogatories in 2019, FAC ¶¶ 42-44; and Defendants also submitted a false declaration from the CFO of Defendants' parent company, Golfzon Newdin Holdings Co. ("Golfzon Holdings"). FAC ¶ 47. The declaration stated that "[e]ach subsidiary [of Golfzon Holdings] conducts and manages its own business operations and Golfzon Holdings is not involved in decision-making." FAC ¶ 49. Plaintiffs allege that this sworn declaration was false, and clearly contradicted by a declaration submitted by GolfzonDeca's CEO in the Mississippi Action, which stated that "[i]n July 2018, *Golfzon Newdin Holdings Co. directed GolfzonDeca* to make certain changes to the way Golf Buddy's

---

[2] The three patents are: U.S. Patent Nos. 9,535,162 (the "'162 Patent"), 10,151,842 (the "'842 Patent"), and 9,383,448 ("'448 Patent").

[3] The Patent Action is *SkyHawke Technologies, LLC v. DECA International Corp. et al*, No. 2:18-cv-01234-GW-(PLAx) (C.D. Cal.).

2

global websites handled personal information." FAC ¶ 52 (emphasis in original).

### c. Defendants' alleged misconduct in the marketing of its GolfBuddy products

Plaintiffs' false advertising claims are based on a long list of alleged misrepresentations by GBA in the marketing of the GolfBuddy products. Plaintiffs mainly take issue with GBA's marketing claims about: (1) its "lifetime" fee-free pricing; and (2) the source of its map data (a crucial component in the range-finding function). FAC ¶¶ 106-108. To accurately measure the distance from the user to any given point on a golf course, a rangefinder must have an accurate map of the course. According to Plaintiffs, SHT, recognizing the limitations of using satellite imagery to build course maps, employed people to survey the golf courses. This meant walking – with GPS equipment – hundreds of thousands of miles on thousands of courses to verify the exact location of points of interest on the course, such as tee boxes, bunkers, hazards, and greens. FAC ¶ 102. Plaintiffs assert that SHT is the only company to walk every single course in its library (in SHT's case, numbering over 30,000 courses). FAC ¶¶ 103-104. They allege that Defendants have made repeated misrepresentations suggesting that the course maps used by their GolfBuddy products were also the product of people painstakingly walking thousands of golf courses. FAC ¶ 106. For example, Plaintiffs take issue with the following claims:

- In a 2012 article, GBA claimed that it "walks courses on foot for added accuracy." FAC ¶ 107.
- A 2015 GolfBuddy press release statement that claimed that GolfBuddy was "the pioneer of on-foot mapping . . . in the [golf] distance measuring market. . . . GolfBuddy is also the only company that focuses 100% on golf, maps courses on foot for added accuracy and provides completely fee-free access to its extensive worldwide database of courses." FAC ¶ 114.
- A statement by GolfBuddy's head of global sales and marketing in a 2015 article that "When it comes to [GolfBuddy's] GPS products, we are one of only two brands in golf that actually walk courses on foot, collecting ground-verified data. . . . Secondly, GolfBuddy is the only brand that combines the accuracy of on-foot mapping with a completely fee-free model." FAC ¶ 120.

Plaintiffs argue that GBA's claims improperly suggest that GBA walks *all* of its courses, when in fact it only walks a small portion of them. Furthermore, they claim that GBA's promise to offer free lifetime course updates is meant to draw a comparison with Plaintiffs' SkyCaddie products,

3

which charge occasional fees for course updates. Plaintiffs argue that the promise of "lifetime" fee-free updates is false because "it is literally impossible for Defendants to have a bona fide present intention to update its existing software for the 'life' of each and every GolfBuddy customer." FAC ¶¶ 133-137.

    C. The operative complaint

The complaint asserts the following 21 causes of action: (1) violation of the Sherman Act, 35 U.S.C. § 2; (2) intentional interference with prospective economic advantage; (3) negligent interference with prospective economic advantage; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*; (5) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*; (6) a finding that the '162 Patent is invalid; (7) a finding that the '842 Patent is invalid; (8) a finding that the '448 Patent is invalid; (9) a violation of Section 43(a) of the Lanham Act; (10) common law fraud against the CFO of Golfzon Holdings; (11) injunctive relief; (12) trade libel and product disparagement; (13) joint and several liability of GBA; (14) joint and several liability of all defendants; (15) unjust enrichment; (16) accounting; (17) public nuisance; (18) injurious falsehood; (19) conspiracy; (20) malicious injury; and (21) punitive damages.

## II.    Legal Standard

    A. Rule 12(b)(1)

Dismissal pursuant to Rule 12(b)(1) is appropriate where either the complaint or evidence extrinsic to the complaint demonstrates that the court lacks subject-matter jurisdiction over the action. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *Id.* The former challenges jurisdiction without disputing the facts alleged in the complaint that form the basis for jurisdiction; the latter disputes those facts. In evaluating a factual attack, if the jurisdictional issue is separable from the merits of a case, a district court may "hear evidence regarding jurisdiction and . . . rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (quoting *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). In those cases, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733. However, where "the jurisdictional and substantive claims are so

intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits," the standard applicable to a motion for summary judgment should be applied. *Rosales v. U.S.*, 824 F.2d 799, 803 (9th Cir. 1987). In those circumstances, the district court should grant the motion to dismiss for lack of subject-matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

     B. Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The court must construe the complaint in the light most favorable to the plaintiff, by accepting all allegations of material fact as true, and drawing all reasonable inferences from well-pleaded factual allegations in favor of the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, the plaintiff must provide grounds demonstrating its entitlement to relief. *Twombly*, 550 U.S. at 555 (2007). Under the Supreme Court's decisions in *Twombly* and *Iqbal*, this requires that the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**III.**   **Discussion**

     A. The antitrust, interference with prospective economic advantage, and patent invalidity claims (claims 1-3, 6-8)

Plaintiffs allege that Defendants procured the GolfzonDeca Patents through fraud on the Patent and Trademark Office and now threaten to enforce the GolfzonDeca Patents against them to create monopolize the market, in violation of the Sherman Act. 15 U.S.C. § 2. FAC ¶¶ 170. This threatened enforcement forms the sole basis for Plaintiffs' standing for their patent invalidity claims. *See* FAC ¶¶ 220 ("GolfzonDeca has threatened an infringement action to enforce the '162 patent against Plaintiffs"), 228 (same), 236 (same). The Court considers these claims in order.

5

The Sherman Act claim is an example of a *Walker Process* claim, named after the Supreme Court decision that held, for the first time, that enforcement of a fraudulently procured patent violated the antitrust laws. *See Walker Process Equipment, Inc. v. Food Machine & Chemical Corp.*, 382 U.S. 172 (1965). To prevail on a *Walker Process* claim, the plaintiff must show that: (1) the defendant "obtained the patent by knowing and willful fraud on the patent office"; (2) the defendant "enforced the patent with knowledge of the fraudulent procurement"; and (3) "all the other elements necessary to establish a Sherman Act monopolization claim". *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016).

Defendants argue that Plaintiffs have failed to state a *Walker Process* claim because they have not adequately pled the second requirement that GolfzonDeca enforced the GolfzonDeca Patents. Whether a *Walker Process* claim may be brought offensively (typically they are raised as a counterclaim by a defendant in a patent infringement suit) is a matter of Federal Circuit law. *Cornucopia Products, LLC v. Dyson, Inc.*, 881 F.Supp.2d 1086, 1098 (Fed. Cir. 2012). Under Federal Circuit law, the standards that the Federal Circuit has "developed for determining jurisdiction in a Declaratory Judgment Action of patent invalidity also define the minimum level of 'enforcement' necessary to expose the patentee to a *Walker Process* claim." *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1358 (Fed. Cir. 2004), *rev'd on other grounds*, 546 U.S. 394 (2006). Whether Plaintiffs have adequately pled their *Walker Process* claim therefore turns on whether they have adequately pled the minimum level of enforcement for their patent invalidity claims. Therefore, the Court now turns to that analysis.

The Declaratory Judgment Act ("DJA") provides that in "a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Generally, the DJA exists "to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966). Although the DJA expands available remedies, it does not undermine the Constitution's minimum jurisdictional requirements. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("[The DJA] enlarged the range of remedies available in the federal courts but did not extend their jurisdiction"). For DJA claims, satisfying these minimum requirements means showing that,

6

under all the circumstances, there exists an "actual controversy" between parties with adverse legal interests of sufficient immediacy, and that declaratory relief will fully resolve the controversy presented. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

The GolfzonDeca Patents are subject to a covenant-not-to-sue issued by GolfzonDeca to SHT (the "Covenant") in March 2019, during mediation that occurred as part of the Patent Action. MTD at 6-7. The Covenant states in relevant part that:

> [GolfzonDeca] covenant[s] not[] to institute any action or lawsuit at law or in equity against [SHT] or [SHT]'s customers, based on [SHT]'s products or services made, used, offered to sell or sold in, or imported into the United States, for patent infringement, whether direct or indirect, or past, present or future, of any of the patents listed below, including all corresponding provisional, continuation, continuation-in-part, divisional, reissue, and reexamination applications pertaining to said patents.

MTD at 7.

Under the DJA, "a covenant not to sue can deprive the Court of subject matter jurisdiction." *Fulton v. Genea Energy Partners,* 12-cv-01506-DOC-(MLGx), 2014 WL 12597588 at *2 (C.D. Cal. Feb. 25, 2014). "Whether a covenant not to sue will in fact divest [the] Court of jurisdiction 'depends on what is covered by the covenant.'" *Fulton*, 2014 WL 12597588 at *2. In proving that a covenant not to sue has mooted the case or controversy, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Plaintiffs argue that the Covenant does not moot their patent invalidity claims because of two defects: (1) there is no word such as "never" indicating that the covenant is "unconditional and irrevocable," and (2) the Covenant is limited to actions "for patent infringement," and therefore not as broad as other covenants that extended to "any claim or any demand." Opp. at 7-8.

These limits, however, have not precluded other courts from finding that covenants-not-to-sue containing similar language mooted the plaintiff's claims. With the first purported defect, the Court does not see how GolfzonDeca's covenant not to institute any action for any of the covered conduct in the "past, present or future" is not the equivalent to saying that GolfzonDeca will "never" file a patent infringement action against SHT or SHT's customers. *See Phoenix Modular Elevator, Inc. v. T.L. Shield & Assoc.*, 14-cv-00339-RGK-(PLAx), 2014 WL 12569344, at *5 (C.D. Cal. Dec. 16, 2014) (finding that a covenant not to sue defendants based on

7

"Defendants' [use, importation, manufacture, etc. of] any elevators that Defendants *currently, or in the past*, use, import, manufacture, . . . [or] any *future elevators* that are substantially the same" mooted plaintiff's claims (emphasis added)). Similarly, the Court does not see how the Covenant's promise not to sue for either direct or indirect patent infringement is not sufficient to eliminate any controversy over the GolfzonDeca Patents. In opposition, Plaintiffs argue that an earlier decision by the Court established that more expansive language promising not to make "any claims, demands, actions, or causes of action" is required. Opp. at 8 (citing *Kindred Studio Illustration and Design, LLC v. Electronic Communication*, 18-cv-7661-GW-(GJSx), 2018 WL 6985317, at *5 (C.D. Cal. Dec. 3, 2018). The Court disagrees. In its *Kindred Studio* decision, the Court found that such language was sufficient to moot the case, but did not state that it was necessary. In fact, one of the cases the Court considered found a very similar covenant sufficient to moot the defendants' claim. As with GolfonDeca's Covenant, the covenant in *Phoenix Modular Elevator* promised "to not sue Defendants for *infringement* as to the [patent at issue]." 2014 WL 12569344 at *2 (emphasis added).[4] In another case, a covenant that also simply promised "not to sue [defendant] as to any claim of the Patents-in-Suit" was found sufficient in that regard (though ultimately defective because it did not extend to the defendant's customers). *See ActiveVideo Networks, Inc. v. TransVideo Electronics, Ltd.*, 975 F.Supp.2d 1083, 1094-96 (N.D. Cal. 2013).

Plaintiffs have not articulated what conduct they engage in or have concrete plans to engage in that would arguably infringe the GolfzonDeca Patents and yet not be covered by the Covenant. Though Plaintiffs allege that "[i]t is obvious that Defendants are planning to use [the Patents] . . . to mark their products and thus unfairly compete against Plaintiffs," this is not relevant to the analysis, which "require[s] a situation in which a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends it has the right to engage in the accused activity without license." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 200).

---

[4] The covenant provided that plaintiff would not "sue Defendants for infringement as to the [patent] based on: (1) any actions by Defendants on, or before, the date of dismissal of the current lawsuit; (2) Defendants' use, importation, manufacture, development, design, marketing, licensing, distributing, offering for sale, or selling any elevators that Defendants currently, or in the past, use, import, manufacture, market, sell, or install; and (3) Defendants' use, importation, manufacture, development, design, marketing, licensing, distributing, offering for sale, or selling any future elevators that are substantially the same structure as those used, imported, manufactured, marketed, sold, or installed by Defendants in the past." *Phoenix Modular Elevator*, 2014 WL 12569344 at *2.

Accordingly, the Court finds that Plaintiffs' patent invalidity claims are moot and therefore dismisses them. Because the same standards governing the declaratory judgment claims for patent invalidity also set forth the minimum level of "enforcement" necessary to plead a *Walker Process* claim, the Court dismisses Plaintiffs' *Walker Process* count for failure to state a claim. Finally, the Court also dismisses the claims for interference with prospective economic advantage because they are derivative of the patent invalidity claims.[5]

B.  The fraud claim (claim 10)

Plaintiffs' fraud claim is against a person who is not a party to this action. Plaintiffs assert that the CFO of Golfzon Holdings made a false declaration in the Patent Action. However, neither the CFO nor Golfzon Holdings are defendants in this action. Therefore, the Court dismisses the claim.[6]

C.  The advertising claims (claims 4, 5, 9, 11-21)

Defendants argue that the false advertising claims and several derivative ones (claims 4, 5, 9, 11-21) are duplicative of Plaintiffs' claims in the Mississippi Action, and therefore the Court should dismiss them on *Colorado River* abstention grounds. Reply at 4-6. Plaintiffs contend that while the factual allegations in the two actions are the same, the legal claims are not and therefore abstention is inappropriate. Opp. at 4.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 817. This "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* However, in certain "exceptional circumstances" where the parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources, a federal court may abstain. *Id.* at 813, 817.

*Colorado River* and its line of cases provide a list of factors to consider to determine whether "exceptional circumstances" exist that warrant a federal court's abstention in the face of

---

[5] Because the Court finds that the Covenant moots these claims, it does not address Defendants' argument that the evidence of threatened enforcement is covered by a confidentiality agreement.

[6] Plaintiffs state that "[i]t is worth noting that even though the [FAC] doesn't expressly cite 42 U.S.C. § 1985(2), the concerted action that has been alleged is plainly actionable under that statute." Opp. at 10. Even if the facts alleged in the FAC could plausibly state a claim under 42 U.S.C. § 1985(2) (it is not clear to the Court how), the CFO is not a party to this action.

9

parallel state litigation. The eight factors considered are:

> (1) Which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. v. Transp. In. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). These factors are to be examined in "a pragmatic, flexible manner with a view to the realities of the case at hand," recognizing that "[t]he weight to be given to any one factor may vary greatly from case to case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16-21 (1983). There is a strong presumption against federal abstention and "[a]ny doubt as to whether a factor exists should be resolved against a stay." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

After a consideration of the *Colorado River* factors, the Court finds that abstention would be an inappropriate abdication of the Court's "virtually unflagging obligation" to exercise jurisdiction over the case. None of the factors weigh strongly in favor of abstention. The ones that cut in favor of abstention are of limited significance, and in the Court's view are not decisive to compel abstention.

The first and second factors are neutral. The first factor is inapplicable as there is no property at stake. On the convenience of this federal forum, Defendants "agree that the Advertising Claims should be decided in [this federal action]," Mot. at 1, and in fact moved to dismiss the Mississippi Action on forum non conveniens grounds, arguing that "California is a far more convenient forum." Mot., Exh. B (ECF No. 30, Page ID #476). The relative convenience of the federal forum is an argument *against* abstention. However, while Defendants understandably believe California is more convenient (given that Deca and GBA are both California corporations with their principal place of business in the state), that does not necessarily make it more convenient than Mississippi, as Plaintiffs are Mississippi corporations with their principal place of business in that state. Therefore, the Court finds that the second factor is neutral.

The fourth and fifth factors cut slightly in favor of abstention and non-abstention, respectively. The fourth factor considers two things: which complaint was filed earlier and the

10

relative progress of the two actions. *Travelers Indem.*, 914 F.2d at 1370. The Mississippi Action commenced in March 2018, while this action began a year and a half later. However, the Mississippi Action has not progressed much further than this one: it appears very little discovery has occurred in the Mississippi Action and Defendants' motion to dismiss the complaint on forum non conveniens grounds was just denied in June 2020.[7] *See* ECF No. 47. Based on this, the fourth factor weighs only slightly in favor of a stay. On the rule of decision factor, Plaintiffs argue that a stay is unwarranted because the federal action asserts a Lanham Act false advertising claim, which is not in the Mississippi Action. While it is true that "the presence of federal-law issues must always be a major consideration weighing *against* surrender" of jurisdiction," *Cone Mem'l Hosp.*, 460 U.S. at 26, this factor is less significant where, as here, state courts have concurrent jurisdiction over the federal law claim. *Cone Mem'l Hosp.*, 460 U.S. at 25; *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) ("If the state and federal courts have concurrent jurisdiction over a claim, this factor becomes less significant."). While Plaintiffs did not assert a Lanham Act claim in the Mississippi Action, there is no suggestion that they cannot amend their complaint to add a Lanham Act claim, and in any event they did assert state law false advertising claims alleging the same unlawful conduct. Opp. at 3, n.3. The presence of Lanham Act claims has not precluded other courts from finding *Colorado River* abstention appropriate. *See, e.g.*, *Silvaco Data Sys., Inc. v. Tech. Modeling Assocs., Inc.*, 896 F.Supp. 973, 977 (N.D. Cal. 1995) (staying Lanham Act false advertising claim where it was based on the same facts alleged in state court in support of a state law unfair competition claim); *Goodin v. Vendley*, 356 F.Supp.3d 935, 946 (staying Lanham Act cybersquatting claim, noting that this factor had less significance and that defendant had offered to stipulate to the plaintiffs amending the state complaint to include the Lanham Act claim).

      The sixth and eighth factors are essentially neutral. They consider the adequacy of the state court to protect the federal rights of the litigants (the "adequacy" factor) and whether the state action will resolve all the issues before the federal court (the "parallelism" factor), respectively. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017). The adequacy factor looks to whether the state court might be unable to enforce federal rights. *See, e.g.*, *Cone Mem'l Hosp.*, 460 U.S. at 26–27 (finding state proceedings might be inadequate

---

[7] The Mississippi Action was slowed down by Defendants' motion to dismiss (filed in May 2019) for lack of personal jurisdiction and forum non conveniens, and subsequent interlocutory appeal of the denial, which resulted in a temporary stay of the Mississippi Action. Inj. Opp. at 3.

because it was unclear whether state courts would compel arbitration under the Federal Arbitration Act). The parallelism factor provides that "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a Colorado River stay or dismissal." *R.R. St.*, 656 F.3d at 982; *see also Cone Mem'l Hosp.*, 460 U.S. at 28 ("When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."). The Court finds that the adequacy and parallelism factors are neutral because these factors generally are "more relevant when [they] counsel[] against abstention, because while inadequacy of the state forum or insufficient parallelism may preclude abstention, the alternatives never compel abstention." *Seneca Ins. Co.*, 862 F.3d at 845. The Mississippi Action is adequate to protect Plaintiffs' federal rights now that the Sherman Act and patent invalidity claims have been dismissed, leaving the Lanham Act claim as the sole federal law claim. As noted earlier, Plaintiffs may enforce their rights in the Mississippi Action through adding a Lanham Act claim or through their existing state law unfair competition claims. There is no other suggestion that Plaintiffs' claims in this action would not be resolved in the Mississippi Action.

The seventh factor, the avoidance of forum shopping, cuts against a stay. Defendants do not argue that Plaintiffs engaged in improper forum shopping by filing this parallel action in federal court after already filing the Mississippi Action. As far as the Court can tell, Plaintiffs filed this action to be able to assert their patent invalidity claims, which federal courts have exclusive jurisdiction over. 28 U.S.C. § 1338.

Finally, the Court considers the third factor: the desire to avoid piecemeal litigation. While, as observed earlier, the weight assigned to each factor may vary by case, the desire to avoid piecemeal litigation is always "[a] substantial factor in the *Colorado River* analysis," *Seneca Ins.*, 862 F.3d at 842, and was "[b]y far the most important factor in [the *Colorado River* decision]." *Cone Mem'l Hosp.*, 460 U.S. at 16. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). Any case in which *Colorado River* abstention may be implicated will necessarily involve the possibility of duplication of work and conflicting results, and so "[a] correct evaluation of this

factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation." *Travelers Indem.*, 914 F.2d at 1369. The Court finds that this factor cuts against a stay. This federal action does not, as in *Colorado River*, involve a multi-state federal regulation with many parties (over a 1,000 in *Colorado River*), where there is a claim-specific "clear federal policy" of avoiding piecemeal litigation. *See Colo. River*, 424 U.S. at 819-20 ("The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system.") This action is not a particularly involved case in terms of having numerous parties, claims, and cross-claims. For these reasons, the Court finds that this factor cuts against abstention.

Among all the factors, only the relative progress factor cuts in favor of abstention (and there, only slightly). The remaining factors were either neutral or cut against abstention. Based on this, the Court finds that there are no "exceptional circumstances" to warrant abstention.

D. Miscellaneous Claims (claims 11, 13-14, 16, 19-21)

Defendants argue that the claims for injunctive relief, joint and several liability, accounting, conspiracy, malicious injury, and punitive damages are not independent causes of action. Reply at 14-16. The Court agrees, and therefore dismisses these claims to the extent that they are pled as distinct causes of action.[8]

E. Plaintiffs' Preliminary Injunction Motion

Plaintiffs seek a preliminary injunction on their Lanham Act false advertising claim,[9] prohibiting Defendants from advertising that their GolfBuddy products use information "based on walking courses" and that therefore they are the "most accurate." Inj. Mot. at 17. According to Plaintiffs, those statements are false because GolfBuddy products are not "the most accurate." They are not the most accurate because GBA does not employ people to walk *every* course in its library, but rather only some courses. Because that claim is still live, the Court now considers

---

[8] *See Lane v. Vitek Real Estate Indus. Group.*, 713 F.Supp.2d 1092, 1104 (E.D. Cal. 2010) (holding that injunctive relief is not an independent claim); *Fraioli v. Lemcke*, 328 F.Supp.2d 250, 282 ("joint and several liability is a request for relief or a rule of contribution: it is not a cause of action"); *Wise v. Wells Fargo Bank, N.A.*, 850 F.Supp.2d 1047, 1055 ("accounting is not an independent cause of action but merely a type of remedy and an equitable remedy at that"); *Navarrete v. Meyer*, 237 Cal.App.4th 1276, 1291 (2015) ("Civil conspiracy is not an independent cause of action."); *Hilliard v. A.H. Robins Co.*, 148 Cal.App.3d 374, 391 (1983) ("There is no cause of action for punitive damages."). The Court did not find any authority suggesting that California law recognizes a cause of action for malicious injury that would apply to Plaintiffs.

[9] Although Plaintiffs brought multiple claims for injunctive relief, they note that those other claims (under the UCL and FAL) are "substantially congruent" to their Lanham Act claim, and agree that whether injunctive relief is appropriate turns on whether Plaintiffs are entitled to it on their Lanham Act claim. *See* Inj. Mot. at 12.

13

whether a preliminary injunction is warranted.

To succeed on a motion for a preliminary injunction, a party must show that: (1) it is likely to succeed on the merits of its claim; (2) it will suffer irreparable harm in the absence of relief; (3) the balance of hardships tips in its favor; and (4) a preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party must present evidence sufficient to clearly carry its burden of persuasion on *each* requirement. *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012); *Winter*, 555 U.S. at 22 (explaining that a preliminary injunction can issue only on "a clear showing that the plaintiff is entitled to such relief").

### a. Likelihood of success on the merits

The elements of a Lanham Act false advertising claim are:

(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008).

To demonstrate falsity, a plaintiff "may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). The evidentiary showing is lower for "literally false" claims than it is for "likely to mislead" claims. For literally false statements, the third requirement – evidence that the statement actually deceived or had the tendency to deceive – drops out. *See, e.g.*, *Mutual Pharmaceutical Co.*, 459 F.Supp.2d 925, 933 (C.D. Cal. 2006) (observing that "[w]here the advertisement is literally false, a violation may be established without evidence of consumer deception"); *Clorox Co. v. Reckitt Benckiser Group PLC*, 398 F.Supp.3d 623, 635-36 (N.D. Cal. 2019) (observing that unlike with "literally false" statements, "likely to mislead" statements require "proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients") (quoting *William H. Morris Co. v. Grp. W. Inc.*, 66 F.3d 255, 258 (9th Cir. 1995)).

Plaintiffs argue that several of GBA's statements were literally false because in them

14

"Defendants claim that they walk every course," which was contradicted by Defendants' sworn statements in the Patent Action that "[DECA System, the entity responsible for the maps,] primarily uses publicly available Google Earth map data as the course for the geographical data used to create its course data. . . . in some instances [Deca] may hire a third party contractor to manually survey the course." Inj. Mot. at 7. Defendants concede that Deca does not walk every course, Inj. Opp. at 12, and so the Court's remaining role is to determine whether any of Defendants' marketing statements were false given this fact.

All but one of the statements identified by Plaintiffs are not literally false on their face, because they do not state that a person walked every golf course. The Court will not list all of those statements – some of which are news articles prepared by third-parties that merely report what GBA representatives stated – but provides the ones below as examples:

- "GolfBuddy specializes purely in the manufacture of golf distance measuring devices and *walks golf courses to create ground-verified accurate maps*, which increases the supreme accuracy of their GPS devices over competitors who simply use satellite imagery." Inj. Mot. at 2.
- "GolfBuddy states they *used teams of expert mappers to walk courses* and *create ground-verified data maps* that give precision accuracy and they promise precision accuracy for over 36,000 courses." *Id.*
- "GolfBuddy is also the only company that focuses 100% on golf, *maps courses on foot for added accuracy*, and provides completely fee-free access to its extensive worldwide database of courses. Unlike some other brands, premium features like Dynamic Green View, distances to targets, hazards and round stats analysis are also completely fee-free, forever, with all products." *Id.* at 4.

(emphasis added by Plaintiffs). On their face, they state only that Defendants walk golf courses "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod Farms*, 108 F.3d at 1139. However, even considering the context of these statements – press release statements by GBA or statements by GBA representatives that were reported in golf magazines – Plaintiffs offer no explanation for why the necessary implication is that Defendants walk *every* course.

The Court finds that the challenged statements' claims that GolfBuddy's maps are accurate ("ground-verified accurate maps," "precision accuracy," "added accuracy") are puffery.[10] A statement is considered puffery if "the claim is extremely unlikely to induce

---

[10] Plaintiffs seek to enjoin Defendants from claiming that their GolfBuddy products are "the most accurate." Inj. Mot. at 17. However, none of the alleged misrepresentations claimed that GolfBuddy products were the most accurate. They merely stated that they were accurate.

15

consumer reliance." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). The difference between non-actionable puffery and actionable statements-of-facts "rests in the specificity or generality of the claim." *Id.* The claims of accuracy fall squarely in that category of "general, subjective claim[s] about a product" that courts have found to be puffery. *Id.* at 52-53 (finding that the statement "that [Defendant] would deliver 'flexibility' in their 'cost-per-copy' contracts" was puffery). *See also*, *Patt v. Antech diagnostics, Inc.*, 18-cv-01689-JLS-(DFMx), 2019 WL 6654078, at *6 (observing "a virtual consensus among courts in the Ninth Circuit that generalized claims of dependability, reliability, or accuracy are mere nonactionable puffery"). In sum, the Court finds that Plaintiffs have not established a likelihood of success on the merits for these statements.

However, the Court agrees that the following statement made by a GolfBuddy marketing coordinator is literally false on its face:

> So GolfBuddy, our motto is Accuracy Matters. And the reason we say that is because *every single course* that's in our database out of the 48,000 are walked by foot. So that means we send mappers to that course and *they walk every single hole by foot* with our own GPS devices.

Inj. Mot. at 2.[11] The statement occurs in a promotional video that appears to have been produced by GBA back in 2018 to promote its GolfBuddy products. Plaintiffs have not indicated if Defendants are still making such claims in any of its marketing activities. If Defendants are doing so, then the Court would find that there is a likelihood of success on the merits for this limited claim.[12] Therefore, the Court considers whether the other factors support a very narrow preliminary injunction prohibiting Defendants from claiming that they walk every course.

                *b. Whether Plaintiffs will suffer irreparable harm in the absence of relief*

Plaintiffs argue that Defendants' false advertising will cause it irreparable harm because it appears that Deca is judgment-proof. Inj. Mot. at 14-16. They cite to a record of Deca's profit and loss results from January 2008 through December 2017 (which they received as part of discovery in the Patent Action), which shows a cumulative loss of $6.9 million over the 10-year period. The Court does not find this one snapshot particularly compelling, given that it does not contain any information about Deca's assets and liabilities over the period.

---

[11] The video is available at: https://www.vimeo.com/254783742. The statement occurs around the two-minute mark.

[12] The Court finds that this promotional video meets the remaining requirements for stating a Lanham Act false advertising claim.

16

However, the Court does find that in these narrow circumstances where Defendants made a literally false statement, a presumption of irreparable harm is warranted. The Court has not found any Ninth Circuit authority establishing such a presumption,[13] though other circuits have (subject to some restrictions). *See, e.g.*, *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 148 (2d Cir. 2007) (holding that "the likelihood of irreparable harm may be presumed where the plaintiff demonstrates a likelihood of success in showing that the defendant's comparative advertisement is literally false and that given the nature of the market, it would be obvious to the viewing audience that the advertisement is targeted at the plaintiff, even though the plaintiff is not identified by name"). It is true that the literally false claim was not a comparative statement that identified Plaintiffs' SkyCaddie products. However, given the small market for golf rangefinder devices, the obvious falsity, and the very narrow scope of the proposed injunction, the Court finds that "traditional principles of equity" warrant a finding of irreparable harm.

> c. *Whether the balance of hardships favors Plaintiffs and a preliminary injunction is in the public interest*

The Court finds that these two factors also weigh in favor of Plaintiffs. The burden of the preliminary conjunction on Defendants is minimal, as they are merely prohibited from making a literally false statement, and the public interest will be served by seeing fewer literally false marketing statements.

### IV. Conclusion

Based on the foregoing discussion, the Court **GRANTS/DENIES IN PART** the motion to dismiss. The Court dismisses every claim except for the UCL (claim 4), FAL (claim 5), Lanham Act (claim 9), trade libel/product disparagement (claim 12), unjust enrichment (claim 15), public nuisance (claim 17), and injurious falsehood (claim 18) claims.

The Court also **GRANTS/DENIES IN PART** the motion for a preliminary injunction. Defendants are enjoined from claiming that they walk every course in their map library (until they do walk every course).

---

[13] One district court in this circuit, not finding any binding Ninth Circuit authority, chose not to adopt this presumption. *See Hansen Beverage Co. v. Innovation Ventures, LLC*, 08-cv-01166-IEG-(PORx), 2008 WL 4492644, at *3 (S.D. Cal. Sept. 29, 2008).